Present:  All the Justices

PEGGY A. MUSSELMAN, EXECUTOR OF THE
ESTATE OF ROBERT C. YOUNG, ET AL.

v.  Record No. 992887   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                         September 15, 2000
THE GLASS WORKS, L.L.C., ET AL.

              FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                      Robert P. Doherty, Jr., Judge


     In this appeal, we consider the issue whether the death of

a party to a non-competition agreement, which was executed as

part of the sale of a business, relieved the purchaser of the

business of its obligation to make payments under the agreement.

     The facts in this case are undisputed.  In July 1995, The

Glass Works, L.L.C. (Glass Works) entered into an Asset Purchase

Agreement (the purchase agreement) with B & L Auto Glass &

Mirror, Inc. (B & L Auto) and its principals, Robert C. Young,

Peggy A. Musselman, and Marian L. Gray (collectively, the

sellers).  Under the purchase agreement, Glass Works purchased

from the sellers, among other things, the inventory, equipment,

and business name of B & L Auto in Roanoke.[*]

     In paragraph 2 of the purchase agreement, Glass Works

agreed to pay B & L Auto a total purchase price of $515,000.  As

provided in that paragraph, the purchase price was payable as

follows: $1,000 deposit, $114,000 cash at closing, $340,000 in

the form of a secured promissory note to the sellers, and a total of $60,000 in payments to Young, Musselman, and Gray under three non-competition agreements.

The non-competition agreements were executed at the same time as the purchase agreement.  Young agreed in his non-competition agreement with Glass Works (the non-competition agreement) not to engage for five years in any business similar to that of B & L Auto as an owner, shareholder, employee, or consultant within a 100-mile radius of Roanoke.  The non-competition agreement provided that "in consideration of [Young's] agreements," Glass Works would pay Young $615 per month for 60 months, for a total payment of $36,900.  The principals of Glass Works, Lury W. Goodall, Jr., Charles C. Nimmo, and Michael E. Puckett, also executed a Guarantee Agreement, personally guaranteeing Glass Works' obligations under the purchase agreement, the promissory note, and the non-competition agreements.

After its purchase of the business in July 1995, Glass Works began making the monthly payments to Young under the non-competition agreement.  When Young died on April 18, 1998, Glass Works stopped making the payments.  Musselman qualified as executor of Young's estate and filed this breach of contract

---

*After the sale, B & L Auto Glass & Mirror, Inc. changed its corporate name to Bobs, Inc.

2

action against Glass Works, Goodall, Nimmo, and Puckett (collectively, the defendants), seeking recovery of the amounts allegedly due Young's estate under the non-competition agreement.

Musselman alleged in her motion for judgment that the amount due under the non-competition agreement was "part of the purchase price" for B & L Auto and, thus, did not abate when Young died.  She also alleged that B & L Auto agreed to "separate the value for the Non-Competition Agreement out of the principal balance of the [promissory] note . . . to allow [Glass Works], at its request, to report a lower 'notes payable' for credit reporting purposes."

The parties submitted the case to the trial court on stipulated evidence.  The trial court ruled that the purchase agreement was ambiguous because its initial declaration, that the purchase price was consideration for the sale of the specified business assets, conflicted with the purchase agreement's later recitation that the purchase price included consideration for the non-competition agreements.  The trial court concluded from this language that the parties intended "separate contracts and separate consideration for the non-competition agreements."  The trial court held that the non-competition agreement was a personal service contract that terminated on Young's death, and that no further payments were

3

due under the agreement.  The court entered final judgment in favor of the defendants.

On appeal, Musselman argues that the payments due under the non-competition agreement were an integral part of the purchase price of B & L Auto's assets, which effectively represented payment for the good will of the business, and did not constitute consideration for a separate personal service contract.  She asserts that Glass Works should not receive a lesser price for the business simply because Young agreed to accept monthly payments under the non-competition agreement rather than a lump sum payment.  Musselman also contends that since the non-competition agreement did not require Young to provide any personal service to Glass Works, but simply required him to refrain from competing with Glass Works, the agreement did not constitute a personal service contract that terminated on his death.

In response, the defendants contend that the non-competition agreement was a separate, personal service contract that required Glass Works to make payments only to Young, rather than to B & L Auto, and that Young's death prevented him from fully performing the contract.  The defendants also assert that Young's estate is not entitled to further payment under the non-competition agreement because that agreement did not obligate

4

Glass Works to continue making payments in the event of Young's death.  We disagree with the defendants' arguments.

When a business transaction is based on more than one document executed by the parties, we will construe the documents together to determine the intent of the parties.  First Am. Bank of Va. v. J.S.C. Concrete Constr., Inc., 259 Va. 60, 67, 523 S.E.2d 496, 500 (2000); Daugherty v. Diment, 238 Va. 520, 524, 385 S.E.2d 572, 574 (1989); American Realty Trust v. Chase Manhattan Bank, 222 Va. 392, 403, 281 S.E.2d 825, 830 (1981). In ascertaining the parties' intent, we consider the plain meaning of the language the parties used in the documents. Pollard & Bagby, Inc. v. Pierce Arrow, L.L.C., 258 Va. 524, 528, 521 S.E.2d 761, 763 (1999); Waynesboro Village, L.L.C. v. BMC Properties, 255 Va. 75, 79-80, 496 S.E.2d 64, 67 (1998).

When the terms of the parties' documents are clear and unambiguous, the interpretation of those terms presents a question of law.  Pollard & Bagby, 258 Va. at 528, 521 S.E.2d at 763; Gordonsville Energy, L.P. v. Virginia Elec. & Power Co., 257 Va. 344, 352-53, 512 S.E.2d 811, 816 (1999).  The issue whether particular documents are ambiguous is also a question of law.  Pollard & Bagby, 258 Va. at 528, 521 S.E.2d at 763; Donnelly v. Donatelli & Klein, Inc., 258 Va. 171, 180, 519 S.E.2d 133, 138 (1999); Tuomala v. Regent Univ., 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996).  Thus, on appeal, we are not

bound by the trial court's resolution of these questions of law, and we are afforded the same opportunity as the trial court to consider the terms of the documents at issue. Pollard & Bagby, Inc., 258 Va. at 528, 521 S.E.2d at 763; Donnelly, 258 Va. at 180, 519 S.E.2d at 138; Gordonsville Energy, L.P., 257 Va. at 352-53, 512 S.E.2d at 816.

We conclude that the purchase agreement and the non-competition agreement are unambiguous, and that their terms formed an integrated business transaction in which the various non-competition agreements effectively represented a purchase of the business good will of B & L Auto. The language of the purchase agreement demonstrates the integrated nature of the purchase transaction by stating that the sum due under the three non-competition agreements was part of the purchase price of the business, B & L Auto. Glass Works' payment of $60,000 for the three non-competition agreements was referred to specifically as part of "the purchase price for all of the property referred to in Paragraph 1." In that paragraph, which is entitled "Sale of Business," the property purchased included all "inventory, equipment, supplies, appliances, vehicles and office furniture owned by [B & L Auto] and used in [its] business."

Our conclusion that the non-competition agreement was an integrated part of the purchase transaction, rather than a separate, personal service contract, also is supported by the

6

terms of the non-competition agreement.  Those terms did not require Young to perform any affirmative duties or services for Glass Works after it purchased B & L Auto.  Thus, the agreement entered into by Glass Works and Young manifested only their intent to benefit Glass Works in its purchase of the business, and not to benefit Glass Works in obtaining Young's expertise or skill in the performance of personal services related to the conduct of the business.

We find no merit in the defendants' argument that Glass Works is not obligated to continue performing its duties under the non-competition agreement because the agreement does not state that Glass Works' duty to make payments under the agreement would continue in the event of Young's death.  Since the non-competition agreement represented part of the purchase price of the business, Glass Works' payments under the non-competition agreement remain due as part of that purchase, which was fully executed and was not conditioned on Young's survival for any period of time.  If Glass Works had intended to be excused on Young's death from its duty to pay this particular part of the purchase price for B & L Auto, Glass Works should have inserted a provision to this effect in the purchase agreement.  We will not, by construction, insert a term in a contract that the parties to the contract omitted.  Lansdowne Dev. Co. v. Xerox Realty Corp., 257 Va. 392, 400, 514 S.E.2d

7

157, 161 (1999); <u>Hutter v. Heilmann</u>, 252 Va. 227, 231, 475 S.E.2d 267, 270 (1996); <u>Bridgestone/Firestone, Inc. v. Prince William Square Assocs.</u>, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995).

Glass Works' argument that Young's death prevented him from performing his duty of forbearance from competition does not alter this result. It is self-evident that Young's death did not constitute a breach of his agreement to refrain from competition with B & L Auto and did not deprive Glass Works of the benefit of its bargain.

For these reasons, we will reverse the trial court's judgment and remand the case to the trial court for entry of judgment in favor of Musselman, as executor of Young's estate, for the remaining amount due under the non-competition agreement.

<u>Reversed and remanded.</u>